0UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

STUART W.,                          )
                                    )
            Plaintiff,              )
                                    )
      v.                            )        No. 1:20-cv-00402-DLP-JRS
                                    )
ANDREW M. SAUL,                     )
                                    )
            Defendant.              )

## <u>O</u>RDER

Plaintiff Stuart W. requests judicial review of the denial by the
Commissioner of the Social Security Administration ("Commissioner") of his
application for Social Security Disability Insurance Benefits ("DIB") under Title II
and Supplemental Security Income ("SSI") under Title XVI of the Social Security
Act. *See* 42 U.S.C. §§ 405(g), 423(d). For the reasons set forth below, the Court
hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and
**REMANDS** this matter for further consideration.

## I.   PROCEDURAL HISTORY

On December 21, 2015, Stuart filed his application for Title II DIB and Title
XVI SSI benefits. (Dkt. 12-3 at 39-47, R. 198-206). Stuart alleged disability
resulting from fractures of the pelvis, left rib cage, and left shoulder; depression and
anxiety; and obesity. (Dkt. 12-3 at 150, R. 309). The Social Security Administration
("SSA") denied Stuart's claim initially on August 16, 2016, (Dkt. 12-2 at 126-133, R.
126-133), and on reconsideration on November 29, 2016, (Dkt. 12-2 at 96-97, R. 96-

97. On December 21, 2016, Stuart filed a written request for a hearing, which was granted. (Id. at 144, R. 144).

On July 30, 2018, Administrative Law Judge ("ALJ") Teresa A. Kroenecke conducted a hearing, where Stuart and vocational expert Janice Bending appeared in person and by phone, respectively. (Dkt. 12-2 at 32-34, R. 32-34). On October 30, 2018, ALJ Kroenecke issued an unfavorable decision finding that Stuart was not disabled. (Dkt. 12-2 at 12-24, R. 12-24). Stuart appealed the ALJ's decision and, on December 5, 2019, the Appeals Council denied Stuart's request for review, making the ALJ's decision final. (Dkt. 12-2 at 1, R. 1). Stuart now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. § 1383(c)(3).

## II.   STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB and SSI only after he establishes that he is disabled. To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that he is not able to perform the work he previously engaged in and, based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a). The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then he must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520 (a negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant

evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant – in light of his age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Stuart is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to h[er] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

## III.   BACKGROUND

### A. Factual Background

Stuart was forty-eight years old as of his December 2, 2015 alleged onset date. (Dkt. 12-2 at 37, R. 37). He has a high school diploma and approximately two years of college education. (Id. at 39, R. 39). He has relevant past work history as a personnel recruiter. (Dkt. 12-2 at 23, R. 23).

### B. Stuart's Medical History[1]

On December 2, 2015, Stuart was involved in a car accident, which left him with a concussion, collapsed lung, and numerous fractures of the ribs, skull, pelvis, spine, left leg, and collarbone. (Dkt. 12-4 at 9-98, R. 324-413; Dkt. 12-5 at 1-106, R. 413-519). As a result of his injuries, Stuart was placed in a medically induced coma, underwent multiple surgeries, and remained in the hospital for 25 days. (Id.).

On December 28, 2015, Stuart was transferred to an acute care rehabilitation facility for "vent[ilator] weaning, possible decannulation, nutrition support, and overall rehabilitative care." (Dkt. 12-10 at 1, R. 637). Stuart engaged in physical therapy and gradually saw healing of his multiple fractures. (Dkt. 12-9 at 26-157, R. 623-793; Dkt. 12-10 at 73, R. 109). Stuart's acute conditions were well managed, which resulted in Stuart being transferred from the acute care facility to a skilled nursing facility on January 29, 2016. (Dkt. 12-10 at 1-2, R. 637-38).

In February 2016, Stuart was permitted to begin full weightbearing as tolerated, and he began using a walker. (Dkt. 12-6 at 33, R. 560; Dkt. 12-10 at 48, R.

---

[1] The Court includes only the medical history relevant to this opinion.

684). On March 30, 2016, Stuart's orthopedic surgeon Dr. Renn Crichlow removed hardware from his pelvis. (Dkt. 12-11 at 4, R. 797). During that surgery and a later follow-up visit, Dr. Crichlow noticed that Stuart's hip had fused and limited his movement, and recommended a total hip replacement. (Dkt. 12-11 at 143-45, R. 936-38). Dr. Crichlow performed the left total hip replacement surgery on May 19, 2016. (Dkt. 12-12 at 33-35, R. 989-91). As of June 2016, Stuart had been discharged from rehabilitation and was permitted to live independently. (Dkt. 12-12 at 42, R. 998).

On July 19, 2016, Dr. Ami Rice performed a consultative examination at the request of the Indiana Disability Determination Bureau. (Dkt. 12-13 at 8-11, R. 1090-93). Due to his inability to tandem or heel to toe walk, Dr. Rice concluded that an ambulatory aid was necessary. (Id.). Dr. Rice noted that Stuart's mood was depressed. (Id.). On August 1, 2016, Dr. Brandon Robbins performed a mental status examination at the request of the SSA. (Dkt. 12-13 at 15-17, R. 1097-99). Dr. Robbins concluded that Stuart did not present with any psychological impairments and, thus, assigned no formal diagnoses. (Id.).

As of August 23, 2016, Stuart had moved from using a walker to using a cane. (Dkt. 12-13 at 28, R. 1110). On November 8, 2016, Stuart presented to Dr. Michael Meng to establish primary care. (Dkt. 12-16 at 39-42, R. 1456-59). Stuart reported that his "[c]ognition has generally been unchanged other than occasional difficulty finishing sentences and [] decreased focus/concentration." (Id. at 40, R. 1457). At his follow-up with Dr. Meng on February 8, 2017, Stuart noted that he was struggling mentally with the loss of work and function; feeling anxiety and having disturbing

7

dreams; having flashbacks about the car accident; feeling as if people were watching

him in public; and having low motivation. (Dkt. 12-16 at 37, R. 1454). Dr. Meng

diagnosed Stuart with anxiety and depression due to the sudden life changes after

the car accident in 2015, prescribed sertraline[2], and referred him for mental health

therapy. (Id. at 38, R. 1455).

On February 20, 2017, Stuart began treatment with Julia Irish, MA, QBHP[3].

(Dkt. 12-16 at 11, R. 1428). Ms. Irish diagnosed Stuart with post-traumatic stress

disorder ("PTSD") based on his flashbacks, intrusive thoughts, nightmares,

avoidance of stimuli, and traumatic grief resulting from the December 2015 car

accident. (Id. at 12, R. 1429). Ms. Irish also confirmed Stuart's diagnoses of

depression and anxiety due to his sleep disturbances, difficulty focusing, feelings of

worthlessness, anhedonia, and increased appetite with weight gain. (Id. at 12-13, R.

---

[2] Sertraline is an antidepressant used to treat depression, post traumatic stress disorder, panic attacks, and social anxiety disorder. It works by increasing the amount of serotonin, a natural substance in the brain that helps maintain mental balance. *Sertraline*, https://medlineplus.gov/druginfo/meds/a697048.html (last visited April 26, 2021).
[3] QBHP stands for Qualified Behavioral Health Professional, which is defined as either of the following, among others, under Indiana state law:

  (1) An individual who has had at least 2 years of clinical experience treating persons with mental illness under the supervision of a licensed professional, as previously defined, with such experience occurring after the completion of a master's degree or doctoral degree, or both, in any of the following disciplines:
    a. In psychiatric or mental health nursing from an accredited university, plus a license as a registered nurse (RN) in Indiana
    b. In pastoral counseling from an accredited university
    c. In rehabilitation counseling from an accredited university
  (2) An individual who is under the supervision of a licensed professional, as previously defined, is eligible for and working toward licensure, and has completed a master's or doctoral degree, or both, in any of the following disciplines:
    a. Social work from a university accredited by the Council on Social Work Education
    b. Psychology from an accredited university
    c. Mental health counseling from an accredited university
    d. Marital and family therapy from an accredited university
440 IAC 11-1-14.

8

1429-30). Stuart's treatment plan was to continue seeing Ms. Irish weekly, then every other week, then on a monthly basis, with the last visit in the record noted to be June 20, 2018. (Dkt. 12-15 at 2-119, R. 1298-1415; Dkt. 12-16 at 1-56, R. 1416-73). Stuart frequently presented with an anxious and depressed mood and reported lack of motivation, difficulty with concentration, and recurrent anxiety. (Id.).

Stuart returned to Dr. Meng on April 7, 2017 for a follow-up, where he reported that he started going to counseling and had been diagnosed with PTSD. (Dkt. 12-16 at 29-31, R. 1446-48). Stuart noted that he still experienced anxiety, had difficulty going out in public, and became overwhelmed when thinking about or dealing with medical bills from his accident. (Id.). Dr. Meng increased Stuart's dosage of sertraline. (Id. at 32, R. 1449).

On May 16, 2017, Stuart followed up with Dr. Meng on his depression and anxiety. (Dkt. 12-16 at 26-29, R. 1443-46). Stuart reported continued anxiety, flashbacks to the accident, mood fluctuations, and lethargy. (Id.). Dr. Meng assigned the diagnoses of anxiety, depression, and PTSD; noted that Stuart should continue with therapy; and renewed his prescription for sertraline. (Id.). Stuart continued to see Dr. Meng in follow-up for his physical conditions. (Dkt. 12-16 at 15, R. 1432).

Stuart's SSA hearing was held on July 30, 2018, where he reported that he continued to use a cane for balance. (Dkt. 12-2 at 44, R. 44). Stuart informed the ALJ that he did not enjoy reading as much because he has trouble focusing and he found himself reading the same paragraphs repeatedly. (Id. at 51, 57, R. 51, 57).

Stuart also testified that he becomes overwhelmed with life's daily tasks and has to nap frequently to lessen the mental load. (Id. at 58, R. 58).

### C. ALJ Decision

In determining whether Stuart qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Stuart was not disabled. (Dkt. 12-2 at 15-24, R. 15-24). At Step One, the ALJ found that Stuart had not engaged in substantial gainful activity since his alleged onset date of December 2, 2015. (Id. at 17, R. 17).

At Step Two, the ALJ found that Stuart suffered from the following severe impairments: history of motor vehicle accident with multiple fractures, including the head, left shoulder, clavicle, ribs, L4-5 transverse process, pelvis, SI joints, and left lower extremity and status post total left hip replacement; traumatic brain injury (TBI); and obesity. (Id.). The ALJ also found that Stuart had non-severe impairments of hypertension, asthma, obstructive sleep apnea, and history of deep vein thrombosis. (Id. at 18, R. 18). The ALJ further found that Stuart had non-severe mental impairments of depressive disorder, anxiety disorder, and post-traumatic stress disorder. (Id.). When considering the "paragraph B" criteria, the ALJ found that Stuart had no limitations with understanding, remembering, or applying information or managing oneself, but mild limitations with interacting with others and maintaining concentration, persistence, or pace. (Id.).

At Step Three, the ALJ found that Stuart's impairments did not meet or medically equal the severity of one of the listed impairments in the Listings. (Id. at

19, R. 19). The ALJ determined that Stuart's physical impairments did not meet or medically equal the severity of Listing 1.02 for major dysfunction of a joint; Listing 1.04 for disorders of the spine; Listing 1.06 for lower extremity fractures; Listing 1.07 for upper extremity fractures; and Listing 11.18 for traumatic brain injury. (Id. at 19-20, R. 19-20). The ALJ further evaluated Stuart's obesity according to Social Security Ruling 02-1p. (Id. at 20). The ALJ did not assess whether Stuart's mental impairments met or equaled a Listing. (Id. at 19-20).

After Step Three but before Step Four, the ALJ found that Stuart had the residual functional capacity ("RFC") to perform sedentary work with the following exertional limitations: no more than occasional stooping and climbing of ramps and stairs; no kneeling, crouching, crawling, or climbing of ladders, ropes, or scaffolds; no more than occasional overhead reaching with the non-dominant left upper extremity; no use of foot controls with the bilateral lower extremities; no exposure to extreme heat, extreme cold, humidity, wetness, vibrations, or hazards, such as unprotected heights or dangerous machinery; must be allowed to use cane for ambulating only; sit for 45-60 minutes at a time for a total of up to 6 hours in the 8-hour workday; stand for 30-45 minutes at a time for a total of up to 2 hours in the 8-hour workday; and walk for 30-45 minutes at a time for a total of up to 2 hours in the 8-hour workday. (Dkt. 12-2 at 20, R. 20).

At Step Four, the ALJ concluded that Stuart is capable of performing his past relevant work as a personnel recruiter. (Dkt. 12-2 at 23, R. 23). The ALJ thus concluded that Stuart was not disabled. (Id.).

## IV.   ANALYSIS

Stuart challenges the ALJ's decision on two grounds.[4] First, Stuart argues that the ALJ erred in finding he had mild difficulties in his ability to sustain concentration, persistence, or pace, while failing to include any corresponding limitations in the RFC evaluation or hypothetical questions to the vocational expert. (Dkt. 16 at 18-19; Dkt. 21 at 3-9). Second, Stuart contends that the ALJ erred by not subjecting his mental health records to expert review. (Dkt. 16 at 20-23; Dkt. 21 at 10-11). The Court will consider these arguments in turn.

### A.  Unsupported RFC and Hypothetical

Stuart argues that the ALJ failed to account for his mild limitations in interacting with others and concentration, persistence, or pace in the RFC assessment and hypotheticals posed to the vocational expert. (Dkt. 16 at 18-19). The ALJ assessed non-severe impairments of depression, anxiety, and post-traumatic stress disorder, but assigned no non-exertional functional limitations in the RFC; thus, Plaintiff contends, the ALJ failed to account for all of his impairments. (Id.; Dkt. 21 at 3-9). Stuart further maintains that the Seventh Circuit has repeatedly rejected hypotheticals and RFCs that fail to adequately represent the claimant's mental limitations with concentration, persistence, or pace. (Id.). Stuart proposes that limitations of "simple, routine, repetitive, unskilled work in a setting where he could be off task a significant amount of time, could work at a pace that would be

---

[4] Stuart's opening brief included four arguments in support of remand. In his reply brief, Stuart withdrew the first and fourth grounds. (Dkt. 21 at 3). As such, the Court will only address Stuart's second and third arguments in support of remand.

slower than the average worker, and could not be held to any kind of production expectation" would address his mild difficulties with interacting with others and maintaining concentration, persistence, and pace. (Dkt. 16 at 19).

In response, the Commissioner asserts that the ALJ's failure to include non-exertional limitations in the RFC was intentional and supported by substantial evidence. (Dkt. 20 at 17-20). Specifically, the Defendant notes that Plaintiff had normal mental status examinations throughout his treatment. (Id. at 17-18). The Commissioner also asserts that Plaintiff fails to identify any functional limitations that would be warranted based on the record. (Id. at 13-16). Finally, the Commissioner maintains that a finding of mild difficulties in maintaining concentration, persistence, or pace "did not compel the assessment of functional mental limitations in the RFC." (Id. at 20).

When crafting a claimant's RFC, an ALJ must incorporate all of a claimant's limitations in the assessment. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Both an RFC assessment and the hypothetical posed to the vocational expert must account for documented limitations of concentration, persistence, or pace. *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). Furthermore, if an ALJ relies on testimony from a vocational expert ("VE"), the hypothetical question the ALJ poses to the VE "must incorporate all of the claimant's limitations supported by the medical evidence in the record." *Varga,* 794 F.3d at 813.

As noted above, in the Step Two analysis, the ALJ found that Stuart has mild limitations in two of the four "paragraph B" criteria – interacting with others and maintaining concentration, persistence, or pace. (Dkt. 12-2 at 18, R. 18). During the RFC analysis, the ALJ imposed no non-exertional limitations to address either of the paragraph B criteria. (Id. at 20, R. 20). The ALJ's discussion of Stuart's mental limitations in the RFC analysis is as follows:

> The consulting psychologist noted no mental diagnoses (19F), which was reiterated by the non-examining State agency psychologists (3A, 4A, 7A, 8A). These opinions are given partial weight, as they are consistent with the medical evidence of record at the time they were rendered. The record reflects no diagnoses of, or treatment for, mental impairments until May 2017 (e.g., 27F).

(Dkt. 12-2 at 23, R. 23).

Here, the ALJ recognized that the consulting psychologist and the state agency psychologists, who conducted their reviews in 2016, predated Stuart's diagnoses and treatment for mental health concerns, and accordingly gave each opinion partial weight. (Id.). The ALJ then noted that Stuart did not receive a diagnosis or begin treatment for any mental health issues until May 2017.[5] (Id.). However, the ALJ neither discusses Stuart's mental health treatment, beyond one citation to the entirety of Stuart's therapy notes that span almost two years, nor includes any non-exertional limitations in the hypothetical to the VE or assigns any non-exertional limitations in the RFC to address Stuart's symptoms related to his depression, anxiety, or PTSD. Even if the ALJ had reviewed Stuart's records and

---

[5] It should be noted that Stuart received diagnoses and began mental health treatment in February 2017. (Dkt. 12-16 at 11, R. 1428).

14

concluded that no functional limitations were warranted, she was still required to explain how she arrived at that conclusion. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (ALJ is not required to mention every piece of evidence but must provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled, in order to promote meaningful judicial review); *Russell G. v. Saul*, No. 1:18-cv-02785-DLP-TWP, 2019 WL 4409358, at *9 (S.D. Ind. Sept. 16, 2019) (ALJ required to explain why limitations were not warranted, especially where a limitation would render claimant disabled).

The Commissioner contends that the ALJ intentionally did not include mental limitations in the RFC because any such limitations are not supported by the evidence in the record. (Dkt. 20 at 17-18). The Commissioner's primary proof to support the ALJ's decision is that Plaintiff's medical records show "normal mental status examination findings" throughout his treatment. (Id.). The Court cannot accept either of these contentions, however, because the ALJ neither indicated that the record supported no mental limitations nor made any reference to Plaintiff's mental status examinations. The Court's review is limited to the reasons articulated in the ALJ's decision, and post-hoc rationalizations submitted by the Commissioner are impermissible. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (attempts to bolster ALJ's position with post-hoc rationale are impermissible); *Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence.");

*Villano v. Astrue*, No. 2:07 CV 187, 2009 WL 1803131, at *3 (N.D. Ind. June 23, 2009) (Commissioner's position limited to the ALJ's written decision, especially with respect to the required bridge between facts and conclusions, thus prohibiting post-hoc rationalization).

The Commissioner suggests that the ALJ's silence on Stuart's mental limitations is justified because a "'mild impairment in concentration, persistence, or pace did not compel the assessment of functional mental limitations in the RFC." (Dkt. 20 at 20). The Commissioner cites to two cases in support of the conclusion that the ALJ was justified in not including any mental limitations in the RFC: *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013) and *Carter v. Colvin*, No. 1:15-cv-1595-SEB-TAB, 2016 WL 4471661, at *4 (S.D. Ind. July 29, 2016), report and recommendation adopted, 2016 WL 4471879 (S.D. Ind. Aug. 23, 2016). These cases are both distinguishable.

In *Carter*, the "ALJ extensively considered the claimant's anxiety and depression before concluding that these impairments did not warrant further limitations in" the RFC. 2016 WL 4471661, at *4. By contrast, in this case, there is no indication that the ALJ considered Stuart's mental impairments beyond noting that they exist. In *Sawyer*, the Seventh Circuit concluded, in dicta, that an individual with a mild limitation in an area of mental functioning does not necessarily require any mental limitations in the RFC. 512 F. App'x at 611. The Court agrees with the Commissioner and *Sawyer* that mental RFC limitations are not required in every case where a mild limitation in mental functioning is

16

assigned; in this case, the Undersigned cannot even reach the determination of whether mental RFC limitations were warranted, however, because the ALJ fails to discuss Stuart's mental health conditions, symptoms, or treatment.

It may well be true that the ALJ considered Stuart's mental limitations and concluded that no functional limitations in the RFC were warranted, and that decision would be fully within the ALJ's discretion to make. The ALJ errs here, however, by remaining silent on the topic of mental limitations, leaving the Court without any opportunity for meaningful review of the ALJ's reasoning. *See Hiatt v. Colvin*, No. 1:12-cv-01438-TWP-TAB, 2014 WL 1048894, at *6 (S.D. Ind. Mar. 18, 2014) (remand appropriate where ALJ's opinion was silent on whether ALJ considered impairment when crafting the RFC); *see also Catchings v. Astrue*, 769 F. Supp. 2d 1137, 1146 (N.D. Ill. 2011) (remand appropriate where ALJ was silent on case dispositive issue of need to elevate legs).

At present, the Court is left to guess what the ALJ considered and why she did not include any limitations that addressed Stuart's difficulties with interacting with others and maintaining concentration, persistence, or pace. In her Step Two analysis, the ALJ found mild limitations because of Stuart's depression, anxiety, and PTSD diagnoses, for which he attended regular therapy; and because he struggled with focus, concentration, and mid-day fatigue. (Dkt. 12-2 at 18, R. 18). These reasons seem to indicate that the ALJ credited some evidence in the record for demonstrating Stuart's issues with concentration, persistence, and pace, especially his own testimony at the hearing that she recounted verbatim in her opinion. (*See*

17

Id.; Dkt. 12-2 at 51, 58-59, R. 51, 58-59). But what the ALJ's opinion lacks is any logical bridge connecting her evaluation of the evidence with the end result of no functional limitations being included in the RFC to address Stuart's difficulties with interacting with others or sustaining concentration, persistence, or pace.

Whether the ALJ assigned the appropriate non-exertional limitations is vitally important to Stuart's case, because the addition of even one non-exertional limitation, such as a limit to "unskilled work," would render a finding that Stuart is disabled. As such, the Court cannot consider the ALJ's failure to be harmless error. *See Daugherty v. Berryhill*, No. 1:18-cv-256, 2019 WL 2083033, at *14 (N.D. Ind. May 13, 2019) (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)) (remand appropriate where ALJ was silent on a case dispositive piece of evidence, "despite the ALJ's duty to acknowledge dispositive evidence"). Because the ALJ fails to provide a logical bridge between the evidence and her conclusions, the Court concludes that the ALJ's opinion is not supported by substantial evidence, and this case must be remanded for further consideration.

### B. Mental Health Records

Plaintiff next argues that the ALJ erred by not subjecting his mental health treatment records to expert review. (Dkt. 16 at 20-22). The neuropsychological consultation and state agency physician record review took place in 2016, before Stuart began discussing his mental health symptoms with his primary care physician, and before Stuart began mental health therapy treatment. (Id.). Thus, Plaintiff argues, there are 135 pages of records documenting mental health

diagnoses, symptoms, and treatment that were never subjected to expert review. (Id.). Plaintiff maintains that expert review of his mental health treatment records, especially with regard to his ability to sustain concentration, persistence, or pace, is necessary, and would demonstrate that non-exertional functional limitations are warranted. (Id. at 23).

The Commissioner argues that Plaintiff "presented no medical source opinions that he had any functional limitations," and that Plaintiff "points to no objective or opinion evidence that was overlooked or misinterpreted by the ALJ." (Dkt. 20 at 20, 23). Thus, Commissioner maintains, the ALJ was not required to subject any of Plaintiff's mental health evidence to expert review. (Id.).

As noted previously, the ALJ concluded that Stuart's depression, anxiety, and PTSD constituted medically determinable impairments in Step Two, but provided no explanation of Stuart's symptoms related to those conditions or his treatment plan in her RFC analysis. While the ALJ was likely correct in giving partial weight to the consulting physician and state agency physicians because their opinions were based on only part of the record (the part before Stuart's mental health treatment began), the ALJ provides no discussion on that missing part of the record. The ALJ is silent on whether those records that reflect diagnoses of depression, anxiety, and PTSD, with symptoms such as decreased concentration, mood fluctuations, nightmares, and lack of motivation, have been considered in the ALJ's RFC analysis. With the ALJ only acknowledging part of those records in her final sentence – "The record reflects no diagnoses of, or treatment for, mental

impairments until May 2017 (e.g., 27F)" – the Court is again left guessing what the ALJ considered and what, if any, conclusions the ALJ drew.

There is no indication that the ALJ relied on the outdated consultative or state agency physicians' opinions to impose no non-exertional limitations; likewise, there is no indication that the ALJ reviewed Stuart's mental health records on her own and impermissibly "played doctor" to conclude that no non-exertional limitations were warranted. Instead, there is simply not enough information in the ALJ's opinion to determine whether Plaintiff's mental health treatment records were properly reviewed, evaluated, and weighed. As mentioned above, the issue of whether Stuart's mental health records were sufficiently evaluated is outcome determinative of this case, because the imposition of even one non-exertional limitation would necessitate a finding that Stuart is disabled.

As mentioned before, when an ALJ is silent on a potentially case dispositive issue (*i.e.*, whether Stuart's mental health records support the imposition of even one mental limitation in the RFC), the Court's ability to conduct a meaningful review has been substantially obstructed and remand is appropriate. *See Daugherty*, 2019 WL 2083033, at *14 (citing *Brindisi*, 315 F.3d at 786). There is no way for the Court to determine whether the ALJ reviewed Stuart's mental health records, let alone whether those records should have been subject to expert review. On remand, the ALJ should provide a logical bridge between the mental health evidence and any conclusions regarding Stuart's mental RFC limitations.

## V.   CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

So ORDERED.

Date: 4/28/2021

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email